In re Petition for Naturalization of
Magda Xiomara BATTLE.
No. 728548.

United States District Court,
E. D. New York.
March 28, 1974.

———

Max D. Leifer, Astoria, N. Y., for petitioner.

Immigration & Naturalization Service by Lloyd A. Sherman, Brooklyn, N. Y., for respondent.

1. Section 316(a) provides that:

No person . . . shall be naturalized unless such petitioner . . . is a person of good moral character, attached to the principles of the Constitution of the United States, and well disposed to the good order and happiness of the United States.

2. Section 337(a) provides that:

A person who has petitioned for naturalization shall, in order to be and before being admitted to citizenship, take in open court an oath (1) to support the Constitution of the United States; (2) to renounce and abjure absolutely and entirely all allegiance and fidelity to any foreign prince, potentate, state, or sovereignty of whom or which the petitioner was before a subject or citizen; (3) to support and defend the Constitution and the laws of the United States against all enemies, foreign and domestic; (4) to bear true faith and allegiance to the same; and (5)(A) to bear arms on behalf of the United States when required by the law, or (B) to perform non-combatant service in the Armed Forces of

335

Memorandum of Decision and Order

MISHLER, Chief Judge.

Immigration and Naturalization Service opposes the petition for naturalization on the ground that the petitioner has failed to establish "that she is attached to the principles of the Constitution of the United States and well disposed to the good order and happiness of the United States . . . ."

Petitioner is a member and ordained minister of Jehovah's Witnesses. She states that the precepts of her religion prohibit the exercise of certain rights and the performance of certain obligations of citizenship. Specifically, petitioner states that her religious belief requires that she refrain from serving on a jury, voting, holding public office, pledging allegiance to the flag, and bearing arms on behalf of the United States.

Immigration and Naturalization Service does not question the sincerity of the petitioner. It claims that petitioner fails to fulfill the statutory requirements set forth in § 316(a) of the Immigration and Nationality Act, 8 U.S.C. § 1427,[1] and is unable to accept in full the oath of allegiance as required by § 337(a), 8 U.S.C. § 1448(a).[2]

the United States when required by the law, or (C) to perform work of national importance under civilian direction when required by the law.

Petitioner is willing to take the oath of allegiance eliminating the requirement to bear arms. She is also willing to perform "work of national importance under civil direction when required by the law." Affidavit of Magda Battle, March 11, 1974. At the hearing of April 4, 1972 before the Examiner she stated that

"I will be willing to help doing any kind of work or secretarial work in hospitals. I will be willing to take care of children, and furthermore, I would be willing to clean the streets if that is necessary under difficult condition of this country, and as I said before I will not be able to fight or go against any other person, but I would be willing to do what I said before." (Tr. Preliminary Examination, April 4, 1972 at 9) (hereinafter referred to as Tr.Prelim. Exam.)

Petitioner has the burden of establishing compliance with all the statutory requirements of citizenship. *See* Berenyi v. District Director, 385 U.S. 630, 87 S.Ct. 666, 17 L.Ed.2d 656 (1967); Kovacs v. United States, 476 F.2d 843 (2d Cir. 1973). In order to determine whether petitioner is entitled to take a modified oath of allegiance, it is necessary to construe the vague phrases found in sections 316(a) and 337 of the Act, *i. e.,* "attached to the principles of the Constitution" and "allegiance to the Constitution." [3]

In Stasiukevich v. Nicolls, 168 F.2d 474, 477 (1 Cir. 1948), the court attempted to delineate the "principles of the Constitution":

> It is not easy to state what are the "principles of the Constitution" within the meaning of the Nationality Act, and the courts have generally shied off from concrete definition . . . .
> It is true enough, as Holmes, J., noted in his dissent in United States v. Schwimmer, 1929, 279 U.S. 644, 654, 49 S.Ct. 448, 451, 73 L.Ed. 889, that "if there is any principle of the Constitution that more imperatively calls for attachment than any other it is the principle of free thought—not free thought for those who agree with us but freedom for the thought that we hate." . . . In the absence of an authoritative ruling by the Supreme Court on the point, we accept the view expressed by Stone, C. J., dissenting, in the Schneiderman case, 320 U.S. at page 181, 63 S.Ct. at page 1363, 87 L.Ed. 1798, that there are principles of the Constitution, within the meaning of the Nationality Act, "and that among them are at least the principle of constitutional protection of civil rights and of life, liberty and property, the principle of representative government, and the principle that constitutional laws are not to be broken down by planned disobedience."

Attachment to principles of the Constitution was defined somewhat differently by Judge Learned Hand in United States v. Rossler, 144 F.2d 463, 465 (2d Cir. 1944):

> [I]t demands no affection for, or even approval of, a democratic system of government; but merely an acceptance of the fundamental political habits and attitudes which here prevail, and a willingness to obey the laws which may result from them.[4]

Finally, allegiance to the Constitution and the laws of the United States was described by Mr. Justice Frankfurter in Baumgartner v. United States, 322 U.S. 665, 673, 64 S.Ct. 1240, 1244, 88 L.Ed. 1525 (1944) as "a compendious phrase to describe those political and legal institutions that are the enduring features of American political society."

These qualifying phrases were not intended as rigid, inflexible rules, but rather as elastic tests to be interpreted in the light of the hopes and objectives of a free democratic society. Schneiderman v. United States, 320 U.S. 118, 139, 63 S.Ct. 1333, 1343, 87 L.Ed. 1796 (1943); Tauchen v. Barber, 183 F.2d 266, 268 (9th Cir. 1950).

The Supreme Court stated in West Virginia State Board of Education v. Barnette, 319 U.S. 624, 637, 63 S.Ct. 1178, 1185, 87 L.Ed. 1628 (1943), that our form of government encourages "strength to individual freedom of mind in preference to officially disciplined uniformity for which history indicates a disappointing and disastrous end." In *West Virginia,* children of members of Jehovah's Witnesses were expelled from

---

3. In Yin-Shing Woo v. United States, 288 F. 2d 434, 435 (2d Cir. 1961), Judge Hand, writing for the court in reversing a denial of a petition because the petitioner ignored 30 parking tickets, said:
   We should of course yield to the text, when the text is plain, but "good order" is a word of vague content . . . .

4. Judge Hand further observed that, "Patriotism is not a condition of naturalization . . . ." 144 F.2d at 465.

public schools for refusal to salute the flag. The court, holding the exercise of such authority by the state to be unconstitutional, noted that:

> The freedom asserted by these appellees does not bring them into collision with rights asserted by any other individual . . . . Nor is there any question . . . that their behavior is peaceable and orderly. The sole conflict is between authority and rights of the individual . . . . [The children and their parents] stand on a right of self-determination in matters that touch individual opinion and personal attitude. 319 U.S. at 630, 63 S.Ct. at 1181.

■ Dissent or rejection of some of our concepts of democracy is not a bar to citizenship. Only if the applicant's beliefs would deny others civil and constitutionally protected rights or if the applicant believes in a change of our form of government through violence should citizenship be denied.

■ The petitioner has demonstrated an awareness and an appreciation of the First Amendment right to the free exercise of religion and speech and has rejected a political society which would deny these rights.[5] She testified that she believed in the Constitution and form of government of the United States,[6] and that she would submit to the authority of the Government.[7] Petitioner's belief in a Kingdom of God free of all political ideologies in which temporal power would be exercised in a free society by a world government goes beyond the principles of the United Nations Charter; nowhere does petitioner suggest that the change should be accomplished by other than existing constitutional procedures. Her intended refusal to vote, hold political office, serve on a jury, or pledge allegiance to the flag is based on her religious belief in a "Kingdom of God,"[8] in which God is the "government and ruler,"[9] and on her belief that only God can judge men.

Petitioner has established that she is "attached to the principles of the Constitution of the United States" and that she would "bear true faith and allegiance to the Constitution and the laws of the United States."

■ The petition is granted.[10] The petitioner, having shown by clear and convincing evidence that she is opposed to any type of service in the Armed Forces of the United States by reason of religious training and belief, may take the oath of renunciation and allegiance containing the substance of clauses (1) to (4) and (5)(B) and (5)(C) of Section 337(a) of the Nationality Act (8 U.S.C. § 1448) and it is

So ordered.

---

5. Petitioner testified before the Examiner on April 4, 1972:

Q. Are you indifferent then to the type of government you live in so long as it does not interfere with your religious beliefs and well being?

A. Well, I could say that it makes no difference to me, but I want to make it clear that for me, [living] in a country like the United States, that I have the freedom of speech and the freedom of doing what I want to do, it really means a lot for me and my family, and we appreciate the country where we live, the type of government that we have that allows us to do our work as Jehovah Witnesses without any interference which it would not be possible if I would live in any other country like Cuba or Russia or any other country under communist system. (Tr.Prelim. Exam. at 6).

6. Tr.Prelim.Exam. at 10; Affidavit of Magda Battle, March 11, 1974.

7. She testified that "though I'm not a citizen I feel myself subject to laws and rules and regulations of this government . . . . And I could respect any other law like anyone else would." Tr.Prelim.Exam. at 12.

8. Tr.Prelim.Exam. at 6.

9. Tr.Prelim.Exam. at 7.

10. In re Petition of Matz, 296 F.Supp. 927 (E.D.Cal.1969) is to the contrary. The District Court denied the petition by a member of Jehovah's Witnesses because of his refusal to vote, serve on juries, or otherwise participate in Government.