BACHER, APPELLANT, *v.* CITY OF NORTH RIDGEVILLE, APPELLEE.

[Cite as Bacher v. North Ridgeville (1975), 47 Ohio App. 2d 164.]

(Nos. 2250 and 2251—Decided March 19, 1975.)

*Messrs. Spike, Meckler, Rothgery & Gurchik,* for appellant.

*West, West & Sherman Co. L. P. A.,* for appellee.

MAHONEY, J. On December 31, 1971, the plaintiff (appellant), Gary F. Bacher, took his oath of office as a fireman in the city of North Ridgeville, Ohio. He swore therein to support the constitutions of the United States and Ohio. He also swore to uphold the charter and laws of the city and to faithfully discharge his duties as a fireman.

Subsequently, plaintiff became interested in, and was officially dedicated into, a religious sect known as Jehovah's Witnesses on February 10, 1974. On February 6, February 18, and March 8, 1974, he refused a direct order from

a superior officer to raise the United States flag. It was a duty of the firemen to raise and fly the national flag over the station under the provision of the rules and regulations of the North Ridgeville Fire Department. For the first two refusals, he drew one day suspensions. However, he was dismissed after the third incident. The suspensions and subsequent dismissal have been upheld by the civil service commission of North Ridgeville and the Lorain County Court of Common Pleas.

From those affirmances, appeals have been lodged in this court, claiming such action was in violation of plaintiff's rights under the United States and Ohio Constitutions. The First Amendment to the United States Constitution provides:

"Congress shall make no law respecting the establishment of religion, or prohibiting the free exercise thereof * * *."

Section 7, Article I of the Ohio Constitution states:

"All men have a natural and indefeasible right to worship Almighty God according to the dictates of their own conscience. No person shall be compelled to attend, erect, or support any place of worship, or maintain any form of worship, against his consent; and no preference shall be given, by law, to any religious society; nor shall any interference with the rights of conscience be permitted. No religious test shall be required, as a qualification for office, nor shall any person be incompetent to be a witness on account of his religious belief; but nothing herein shall be construed to dispense with oaths and affirmations. Religion, morality, and knowledge, however, being essential to good government, it shall be the duty of the general assembly to pass suitable laws to protect every religious denomination in the peaceable enjoyment of its own mode of public worship, and to encourage schools and the means of instruction. (See Const. 1802, Art. VIII, Sections 3, 25.)"

Plaintiff contends that the act of raising the flag is a form of idolatry under his interpretation of the Bible, Exodus 20: 4-5; I John 5:21 (King James). He considers it a religious ceremony of worship to something other than

God. It is, he argues, a reverent act to a sacred symbol of a nation. He points to the national standards for hoisting, flying, displaying, lowering, folding and storing the flag, as well as destroying a worn-out flag. He asserts that neither the raising or lowering of the flag, nor his refusal to do so in any way affects his abilities to perform his job as a firefighter. He, however, emphasizes that what is within his religion is a matter of his own individual conscience and that it may differ from one Jehovah's Witness to another. He says his refusal does not, in any way, interfere with any other person's right, or duty to raise or lower the flag.

Bacher emphasizes that there is no danger to any city interest, such as its health, safety or morals, which the city must protect. His refusal, he argues, in no way interferred with the rights of others or violated the peace and good order of the city.

The defendant (city) argues that the act of raising or lowering the flag is a ministerial act and that there is no ceremony, pledge, oath or ritual followed other than the customs set forth in the national standards. They argue that there are no absolute constitutional rights. They feel that discipline and teamwork are essential to the efficiency and quality of the fire department. They point out that if one person is permitted to deviate from the rules, it will lead to a break-down in respect for authority and in the essential military-like discipline required in the fire department, or that it will lead to a failure to obey a command in an emergency situation. They argue that good morale in the department is essential and is based upon equal treatment and a sharing of duties, however menial. The defendant further believes that the required act does not constitute something within the scope of the plaintiff's religion. They feel that wide discretion is necessary in the fire chief and safety director as to what conduct is injurious to the efficiency of their department. The civil service commission felt that:

. "Discipline within the ranks of the members * * * must be enforced and an undivided allegiance to the public

interest maintained even at the expense of freedom of action of an individual member. Mr. Bacher has a right as a citizen to believe as he chooses but his religious beliefs cannot be permitted to disrupt departmental operation, efficiency and equal treatment of personnel. * * *''

The civil service commission, in its finding, further stated:

''* * * It is to be understood the freedom of religious belief is a constitutional right, but freedom in the method of expressing that belief is not a constitutional right. There is no legal authority to constrain belief, but no one can lawfully stretch his own liberty of action so as to interfere with that of his neighbors, or violate peace and good order. The whole system of law might be practically superceded if, under the pretext of liberty of conscience, the commission of crime is made a religious dogma. It is a fundamental condition of all liberty and necessary to civil society, that all men must exercise their rights in harmony, and must yield to such restrictions as are necessary to produce that result.

''In the case at hand no interference with religious worship or the practice of religion in any proper sense was shown, but only the exercise of local control over the conduct and activities of municipal employees. * * *''

The sole issue before us is whether the rules and regulations of the North Ridgeville Fire Department requiring firemen to raise the national flag are unconstitutional in their application to Gary F. Bacher, as a deprivation of his right to freedom of religion guaranteed under our state and federal constitutions.

There are no federal or state laws making it mandatory for flags to be flown over most public buildings. Congress did enact laws to unify and standardize the customs for patriotic observances. See 36 U. S. C. 173-178, Patriotic Customs. Ohio law does require the flag to be flown over school buildings (R. C. 3313.80) and at election polling places (R. C. 3501.30).

It is axiomatic that first amendment rights are enjoined upon the states through the Fourteenth Amendment

to the United States Constitution. *Cantwell* v. *Connecticut* (1940), 310 U. S. 296. Freedom of religion has two facades. There is the freedom to believe, which is an absolute freedom. There is, likewise, the freedom to act, which may be controlled when it conflicts with the rights of others. *United States* v. *Ballard* (1944), 322 U. S. 78; *Cantwell* v. *Connecticut, supra.* The absolute right to believe precludes us from inquiry into the truth or falsity of religions. *United States* v. *Ballard, supra.*

"Men may believe what they cannot prove. They may not be put to the proof of their religions, doctrines or beliefs." (*United States* v. *Ballard, supra* at 86.)

The freedom to act on behalf of one's religious beliefs does not free an individual from responsibility to conduct themselves obediently to laws, which are imperatively necessary to protect society as a whole from grave and pressing dangers to interests which the state may lawfully protect. *West Virginia Bd. of Ed.* v. *Barnette* (1943), 319 U. S. 624. Later case law, when applying a test to state action, now mandates that there be a compelling state interest to justify and warrant a curtailment in any way of first amendment rights. *Wisconsin* v. *Yoder* (1972), 406 U. S. 205; *Shapiro* v. *Thompson* (1969), 394 U. S. 618; *Sherbert* v. *Verner* (1963), 374 U. S. 398.

The city argues that the act of raising the flag is not a ceremony. However, we find that such action is a ceremony in that the standards established by congress to unify patriotic customs require that the flag be raised briskly, and lowered ceremoniously and that it fly the field in a particular fashion. 36 U. S. C. 173-177, Patriotic Customs. The flag is the symbol of our country. Its raising or lowering must be done with reverence and respect. We cannot doubt the sincerity of plaintiff's belief, nor the reasonableness of that belief, that partaking in that ritual, or ceremony is offensive to God.

"If there is any fixed star in our constitutional constellation, it is that no official, high or petty, can prescribe what shall be orthodox in politics, nationalism, religion, or other matters of opinion or force citizens to confess by

word or act their faith therein. * * *." (*West Virginia Bd. of Ed.* v. *Barnette, supra* at 642.)

The next thrust of the defendant is the argument that the morale, efficiency, discipline and authority of the fire department is a compelling state interest, sufficient to justify this impingement on the First Amendment rights of the plaintiff. There is no evidence that the morale, discipline or efficiency of the department is, in any way, affected or threatened other than the suppositions of the officers and civil service board.

For comparisons, see *Sheldon* v. *Fannin* (D. Ariz. 1963), 221 F. Supp. 766, where the court enjoined the suspension of students (Jehovah's Witnesses) who refused to stand during the National Anthem. Also, see *Wisconsin* v. *Yoder, supra*, where the Supreme Court found that Wisconsin's compulsory school attendance law must yield to the Amish religious tenets. Similarly, in *Goetz* v. *Ansell* (C. A. 2, 1973), 477 F. 2d 636, the court enjoined school officials from disciplining a student who remained seated during a flag pledge ceremony; likewise, in *Russo* v. *Central School District No. 1* (C. A. 2, 1972), 469 F. 2d 623, the court enjoined the school board from discharging a teacher who stood, but refused to utter the pledge of allegiance to the flag with her students. In the New Jersey case of *Morgan* v. *Civil Service Commission* (1944), 131 N. J. 410, 36 A. 2d 898, the state Supreme Court ordered the appointment of a Jehovah's Witness as a bridge attendant, even though he had objections to the patriotic exercise of saluting the flag. *In re Petition of Battle* (E. D. N. Y. 1974), 379 F. Supp. 334 (for naturalization), a district court in New York granted the petition even though she indicated she would not vote, hold political office, serve on a jury or pledge allegiance to the flag.

The above are some of the many examples that hold that freedom of religious conscience, belief, and action is only susceptible of restriction to prevent grave and immediate danger to interests which the state may lawfully protect. *West Virginia Bd. of Ed.* v. *Barnette, supra.* We have no such showing here, nor do we have any com-

170

pelling state interest demonstrated. The showing merely of a rational relationship to some colorable state interest will not suffice. *N. A. A. C. P.* v. *Button* (1963), 371 U. S. 415. The defendant has even failed to show that any alternative action was tried, such as giving this plaintiff a different duty in exchange for the raising and lowering of the flag. Such a course could very well, and probably would be a lesson in religious tolerance so vital to the preservation of our democratic system.

Lastly, the defendants urge us to follow the unreported case of the *City of Lorain* v. *Longorio*, Court of Appeals for Lorain County, No. 1552 (1962), which was decided by this court. We have examined that case and we find that it is distinguishable on its facts and not determinative of the issues in this case.

We, therefore, reverse the judgment of the trial court in affirming the appeal of the plaintiff from the action of the North Ridgeville civil service commission. We further remand this matter to the civil service commission, which is hereby ordered to restore the plaintiff to his position as a firefighter in the North Ridgeville Fire Department.

*Judgment reversed.*

BRENNEMAN, P. J., and VICTOR, J., concur.