THE STATE OF OHIO, APPELLEE, *v.* BIDDINGS, APPELLANT.

(No. 88AP-910—Decided October 14, 1988.)

*Michael Miller,* prosecuting attorney, and *Alan C. Travis,* for appellee.

*James Kura,* county public defender, and *Barbara Slutsky,* for appellant.

McCORMAC, J. Robert Biddings, defendant-appellant, appeals the trial court's order requiring the taking of his blood to have it tested for DNA and compared to samples taken from rape victims. Defendant contends that the trial court's order is a final appealable order and that the order deprives him of his individual freedom to practice his religion as guaranteed by the First and Fourteenth Amendments of the United States Constitution, and Section 7, Article I of the Ohio Constitution.

The first issue is whether the order of the trial court, refusing to quash the search warrant which permits the state to take a blood sample from the person of defendant, is a final appealable order. In deciding this question, we note that the issue is not the admissibility of evidence obtained as a result of the execution of the search warrant, but instead, whether defendant's constitutional rights to freedom of religion will be violated by the mere taking of a blood sample from him. If the question were solely the admissibility of the evidence, the order of the trial court would not be appealable at this stage since there would be adequate opportunities for defendant to contest any ruling concerning the use of evidence after conviction. However, the contention of defendant is that the

mere taking of the samples constitutes the violation of his religious freedom rather than any use that may be made of the samples. Hence, if that were true, no later appeal would be effective to remedy a violation that had already taken place.

R.C. 2505.02 defines a final order as "* * * an order that affects a substantial right made in a special proceeding * * *." Defendant has a substantial as well as a constitutional right to practice his religion according to his tenets and not to have the state violate those rights. See *In re Milton* (1987), 29 Ohio St. 3d 20, 29 OBR 373, 505 N.E. 2d 255. To determine whether an order was issued in a special proceeding, we must weigh the harm to the prompt and orderly disposition of the litigation and the waste of judicial resources because of possible multiple appeals against the need for immediate review because an appeal after final judgment is not practical. See *Amato* v. *General Motors Corp.* (1981), 67 Ohio St. 2d 253, 256-258, 21 O.O. 3d 158, 160-161, 423 N.E. 2d 452, 455-456. As previously noted, there is no effective way to remedy a violation of defendant's freedom to practice his religion without government intervention if the violation has irreparably taken place prior to an opportunity to appeal. Hence, applying the *Amato* balancing test, we find that there is a final appealable order of the issue of whether defendant has demonstrated that the execution of the search warrant will violate his constitutional right of religious freedom.

The state may obtain blood from a defendant by execution of a search warrant against the defendant's wishes where there is probable cause to believe that evidence relating to a crime will be found therein. *Schmerber* v. *California* (1966), 384 U.S. 757. Hence, facially the search warrant is valid as the affidavit upon which it is based states ample grounds for a reasonable magistrate to believe that the blood sample taken from defendant may produce evidence of a crime. In regard to the facial validity of the search warrant, it is not significant that there may be other methods by which evidence of a crime may be found. However, defendant asserts a matter not asserted in *Schmerber,* which is that the mere taking of the blood sample would cause a violation of his religious belief and the freedom to practice his religion as he sees fit. The trial court scheduled a hearing to consider this matter. Although the defendant argued that the state had the burden to proceed, the state's burden was fulfilled by the showing that the search warrant complied with the dictates of *Schmerber.* The state was not required to prove that the taking of the blood sample would not interfere with defendant's right to practice his religion. Indeed, the state has no knowledge of defendant's subjective religious belief. Thus, the defendant had the burden to show that the taking of the blood sample would violate his religious belief.

The defendant waived his right to be at the hearing and he did not testify. There was no testimony adduced at the hearing, only statements of counsel. It appears that there was an agreement that defendant is a member of Jehovah's Witnesses, although he may not be active in that church at this time. It was also conceded that the Jehovah's Witness faith does not prohibit the taking of a blood sample. Hence, there was no necessity of evidence concerning these two matters. The issue then revolved around whether a person's individual religious belief, false or true, that is at complete odds with the beliefs held by the majority, if not all, of his religious order is sufficient to give rise to a constitutional right to practice his religion if

his views are sincerely held rather than merely being used as a ruse to avoid some undesirable consequence of actions proposed to be taken against him.

The case law supports the proposition that an honestly held religious belief, even one at odds with the majority or all of the members of the religious organization to which the person belongs, is entitled to constitutional protection. See *Thomas* v. *Review Bd. of Indiana Employment Security Div.* (1981), 450 U.S. 707; *Bacher* v. *North Ridgeville* (1975), 47 Ohio App. 2d 164, 1 O.O. 3d 255, 352 N.E. 2d 627. Thus, if defendant proved that he had an honestly held religious belief that prohibited the taking of blood samples from him, that belief is entitled to constitutional protection without inquiry into the truth or falsity of his view or whether he has correctly interpreted the Bible.

The defendant did not prove that he had an honestly held religious view that prohibited the taking of blood samples from him. He did not testify at the hearing; the only "evidence" at the hearing was counsel's statement that he had that view. Counsel's statements are not sufficient to carry defendant's burden in this regard where defendant chose not to place his credibility in issue by being subject to cross-examination. Defendant's claimed beliefs are suspect since they appear to be at complete variance with the religious order to which he claims to belong and he has a cogent, self-serving motivation to prevent the state from obtaining what might be the strongest possible evidence to convict him of numerous crimes. Thus, the trial court did not err in refusing to quash the search warrant because defendant failed to carry his burden to show that he had an honest belief that taking blood from him would violate his religious principles.

Following the trial court's deter-mination, an affidavit was submitted by defendant that, in a conclusory fashion, stated that he was religiously opposed to the taking of blood based on Genesis 9:5, 6 and that he had no religious objections to the taking of other physical samples. However, that affidavit was not properly before the trial court, nor is it the basis for finding that the trial court erred in failing to set aside the search warrant. Defendant was not under cross-examination and subject to a determination of whether his claimed religious beliefs were honestly held.

The inquiry is not over even if an honestly held religious belief against certain action is proved. The First Amendment to the United States Constitution, which guarantees freedom of religion, encompasses two aspects: the freedom to believe and the freedom to act. The freedom to believe is absolute, but the freedom to act is not. One's relation to God and the obligations that he may believe that they impose and the manner in which he expresses those beliefs cannot be interfered with, provided that there is no interference with the morals of the people and the laws of society designed to secure us peace and prosperity. *United States* v. *Ballard* (1944), 322 U.S. 78.

Applying the *Ballard* principles, courts have held that blood tests may be ordered against claims of personal religious beliefs when the state has a compelling and paramount interest. Generally, the cases in which that doctrine has been applied involved paternity proceedings. See Annotation (1985), 37 A.L.R. 4th 167; Annotation (1956), 46 A.L.R. 2d 1000, Section 6d (Later Case Serv., 1989 Supp.). See, also, *State* v. *Meacham* (1980), 93 Wash. 2d 735, 612 P. 2d 795; *Martine S.* v. *Anthony D.* (1983), 120 Misc. 2d 567, 466 N.Y. Supp. 2d 194.

Even if we accept defendant's belated affidavit as evidence of his

honestly held religious belief, that personally held viewpoint is insufficient to override the compelling state interest involved. The interest of the state in obtaining evidence to prove that defendant was involved in rape and other crimes of violence is great. There may even be a future interest of the victims to know who the perpetrator was, given the latent possibility of disease that may stem from this type of contact. Certainly, the state's interest is at least as great as the interest of the parties in determining the paternity of a child.

Defendant argues that DNA fingerprinting may be obtained by less intrusive ways that do not violate defendant's religious beliefs, such as use of body tissues and fluids other than blood. The only evidence pertaining to this issue is the materials issued by Cellmark Diagnostic, the laboratory that was to perform the tests, which materials state that DNA fingerprinting can be accomplished from semen and other DNA bearing cells, as well as from blood. The record does not demonstrate whether DNA fingerprinting with blood is better or the same as can be accomplished with the use of other tissues or fluids, or whether the acceptability into evidence of DNA fingerprinting with blood is more likely than with other fluids. Expert testimony would be needed to show that effective, less intrusive means are available. The unsworn and inconclusive brochure of Cellmark Diagnostic is insufficient for this purpose.

The trial court did not err in refusing to suppress the search warrant. Since the trial court has not placed an order on the record reflecting that ruling, that order should be entered immediately to make this appeal mature. This court's temporary stay of execution of the search warrant to resolve these important issues on appeal is dissolved, effective with entry of judgment. The trial court may order execution of the search warrant forthwith.

*Order affirmed;*
*stay of execution*
*dissolved.*

REILLY and BOWMAN, JJ., concur.