MARSH, Appellee,

v.

CLAY, Appellant.

[Cite as *Marsh v. Clay* (1998), 125 Ohio App.3d 518.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 71665.

Decided Feb. 2, 1998.

*Robert H. Grano* and *Timothy R. Brown,* Cuyahoga County Assistant Prosecuting Attorneys, for appellee.

*Almeta A. Johnson,* for appellant.

PATTON, Judge.

The domestic relations court established respondent-father Cliff Clay's paternity after he refused to take a genetic test. The court ordered him to pay petitioner-mother Sherry Marsh child support. The dispositive issue in this appeal is whether the court gave defendant notice of intent to enter a finding of paternity.

The mother filed this February 1993 Uniform Reciprocal Enforcement of Support Act petition, seeking to establish defendant's paternity of the ten-year-old child. The court found the parties' representations and denials of paternity sufficiently contradictory to warrant genetic testing to determine paternity. To that end, the court ordered both parties to submit to testing, cautioning the parties that failure to submit to genetic testing might result in a contempt citation, punishable by imprisonment or fine.

When defendant did not submit to testing, the mother filed a motion for a default judgment. At about the same time, defendant filed a motion for sanctions and sought an order compelling discovery related to a request he made that the mother produce certain documents establishing her income and net worth. The court scheduled a hearing on the motion for sanctions, but did not schedule any date to hear the motion for a default judgment.

Before hearing the motion for sanctions, the court issued a journal entry in which it established defendant's paternity by default. The court later conducted a hearing on child support and ordered defendant to pay $261.35 per month, retroactive to April 1993.

The first assignment of error complains the court erred by entering a finding of paternity by default because defendant appeared and contested paternity. We sustain this assignment because the record shows that defendant did not receive

notice of the court's intent to proceed to enter a finding of paternity on his refusal to submit to genetic testing.

R.C. 3111.09(A) states:

"If the mother or other guardian or custodian of the child brings an action under sections 3111.01 to 3111.19 of the Revised Code and if the alleged defendant of the child willfully fails to submit himself to genetic testing * * * the court shall issue an order determining the existence of a parent and child relationship between the defendant and the child without genetic testing. If the party shows good cause for failing to submit to genetic testing * * * the court shall not consider the failure to be willful."

■ It is a misnomer, under the circumstances presented in this case, to characterize the court's paternity determination under R.C. 3111.09(A) as a "default." R.C. 3111.08(B) expressly provides that "[i]f the person against whom [a paternity] action is brought fails to plead or otherwise defend against the action, the opposing party may make an oral or written motion for default judgment pursuant to the Rules of Civil Procedure." Unlike the default provisions of R.C. 3111.08(B), R.C. 3111.09(A) provides that a paternity determination may be made as a sanction only for a party's willful refusal to submit to genetic testing. The sanction for refusing to take the genetic test is completely different from the default procedures of R.C. 3111.08(B).

■ R.C. 3111.09(A) necessarily requires some form of adversarial hearing before the court can make a paternity determination because the court must determine whether the failure to submit to genetic testing is willful. We suppose the court could, in the unusual case, make a finding of willfulness related to a refusal to submit to a genetic test without a hearing solely on the number of refusals by a party. However, R.C. 3111.09(A) gives a party the chance to explain why the refusal to take the test was not willful. This statutory opportunity to explain away a refusal to take the test necessarily implies that the party should be given the chance to come before the court and explain his refusal to take the test. Any conclusion to the contrary would effectively nullify the intent of the statute.

As far as we can tell from the record, the court did not give defendant notice of its intent to enter a paternity order based on his willful refusal to submit to the genetic test. The only notice the court gave defendant concerned a hearing on the motion for sanctions. The court's order stated, "MO. # 246687 filed 05/11/94 for sanctions set for scheduled hearing 07/28/94 at 8:45 * * *." This order referenced only defendant's motion for sanctions. The court continued the hearing twice, and eventually hearing the matter on October 19, 1994. The court made the paternity determination on August 5, 1994.

■ The court did inform defendant that his failure to submit to testing might result in a contempt citation punishable by either a fine or imprisonment, but this notice did not, in any way, inform defendant that his failure to submit to genetic testing would result in a paternity determination. The consequences of a paternity determination, particularly as applicable in this case, are more far-reaching than mere contempt. The party deemed a parent as a result of refusing to take a genetic test under R.C. 3111.09(A) may be required to pay child support for many years. This long-term obligation is far different from the simple contempt the court warned defendant he might face if he willfully refused to take the genetic test, and defendant was entitled to notice of that obligation. Accordingly, we sustain the first assignment of error.

*Judgment reversed*
*and cause remanded.*

DYKE, P.J., and JAMES D. SWEENEY, J., concur.