JOURNAL ENTRY AND OPINION
Defendant-appellant, Cliff Clay, appeals the judgment of the Cuyahoga County Court of Common Pleas, Domestic Relations Division, which found that appellant's failure to submit to genetic testing as ordered by the court was willful and ordered him to pay $50 per month in child support. For the reasons that follow, we affirm the judgment of the trial court.
In February 1993, plaintiff-appellee, Sherry Marsh, filed a Uniform Reciprocal Enforcement of Support Act petition, seeking to establish appellant's paternity and support obligations with respect to Kamau A. Suttles, born on January 20, 1983. After an evidentiary hearing at which it found the parties' representations and denials of paternity sufficiently contradictory to warrant genetic testing, the trial court ordered both parties and the minor child to submit to genetic testing.
Because appellant did not submit for genetic testing, in early 1994, appellee filed a motion for default judgment. On August 5, 1994, the trial court granted appellee's motion for default judgment, adjudicating appellant to be the minor child's father and scheduling a hearing on the issue of child support.
This court reversed on appeal, holding that the trial court had not advised appellant that his failure to submit to testing would result in a paternity determination. Marsh v. Clay (Feb. 2, 1998), Cuyahoga App. No. 71554, unreported. Accordingly, we remanded the case for a hearing pursuant to R.C. 31109(A) to ascertain whether appellant had good cause for his failure to submit to genetic testing.[1]
On June 9, 1998, the trial court held a hearing regarding the reasons for appellant's failure to submit to genetic testing. Appellant testified that when appellee informed him that she was pregnant and that he was the father, he told her that he was willing to take a paternity test after the child was born because "it made sense and was an honorable thing to do at the time." Appellant testified that he vowed to appellee, however, that if she did not respond to his offer within a certain amount of time, he would never take any genetic testing.
Appellant testified that appellant lied to him during their relationship by telling him that she was using contraceptives but then purposely became pregnant, aware that the law would require him as father to support the child. Appellant testified further that his Native American religion does not allow him to break a vow or to "feed a lie." Therefore, by submitting to genetic testing, he would break the vow that he had made to not take any testing and would "feed" appellee's deception to him.
On October 26, 1998, the trial court entered an order adopting the magistrate's findings of fact and conclusions of law, finding that appellant's failure to submit to genetic testing was willful and, therefore, adjudicating appellant to be the father of Kamau Suttles.
On January 19, 1999, the trial court held a hearing regarding appellant's child support obligations. On September 28, 1999, the trial court adopted the magistrate's findings of fact and conclusions of law and ordered appellant to pay $50 per month in child support and an arrearage in the amount of $3,458.50 for the period from April 22, 1993 to January 19, 1999.
Appellant timely appealed, raising five assignments of error for our review. Appellant's first assignment of error states:
 I. THE TRIAL COURT'S JUDGMENT THAT RESPONDENT'S FAILURE TO TAKE GENETIC TEST IS WILLFUL IS VIOLATIVE OF RESPONDENT'S FIRST AMENDMENT RIGHT TO THE FREE EXERCISE OF RELIGION OF THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 7 OF THE OHIO CONSTITUTION.
In his first assignment of error, appellant contends that the trial court's judgment that his failure to submit to genetic testing was willful deprives him of his freedom to practice his religion as guaranteed by the Constitutions of the United States and Ohio. Appellant contends that his Native American religion will not allow him to break his vow not to engage in any genetic testing and, therefore, to adjudicate him as the natural father of Kamau Suttles on the basis of his refusal to take genetic testing penalizes him for the exercise of his religion.
An honestly held religious belief is entitled to constitutional protection. State v. Biddings (1988), 49 Ohio App.3d 83, 85, citingThomas v. Review Bd. Of Indiana Employment Security Div. (1981),450 U.S. 707; Bacher v. North Ridgeville (1975), 47 Ohio App.2d 164. Even a genuinely held religious conviction may be subject to some restriction by the state, however.
First Amendment religious freedom embraces two concepts: freedom to believe and freedom to act. The former is absolute, the latter is not.Biddings, supra, citing United States v. Ballard (1944), 322 U.S. 78. The concept of ordered liberty precludes allowing every person to adhere to his or her own private standards of conduct on matters in which society has important interest. Wisconsin v. Yoder (1972), 406 U.S. 205. Accordingly, a state may restrict an individual's exercise of conduct. A neutral law of general applicability, therefore, does not violate theFirst Amendment right to the free exercise of religion even if it incidentally affects a religious practice. Employment Div., Dept. ofHuman Resources of Oregon v. Smith (1990), 494 U.S. 872. Such laws may be enforced even absent a compelling governmental interest. Id. at 882-885. See, also, Shaffer v. Saffle (1998), 148 F.3d 1180.
R.C. 3111.09(A)(1) provides, in pertinent part:
 In any action instituted under sections 3111.01 to 3111.19 of the Revised Code, the court, upon its own motion, may order and, upon the motion of any party to the action, shall order the child's mother, the child, the alleged father, and any other person who is a defendant in the action to submit to genetic tests. * * *
R.C. 311.09(A)(2) further provides that if a party willfully, and without good cause, refuses to submit to genetic testing as ordered by the court, the court may make a paternity determination as a sanction.
There is no evidence that this statute is not neutral or generally applicable, or that it was applied to appellant differently because of his religious belief. Moreover, in any paternity action, the state has a substantial interest in safeguarding the rights of the child to needed support from his or her natural father, while at the same time protecting the interests of its taxpayers. Thus, appellant's belief that he cannot break his vow not to engage in genetic testing, even if it is an honestly held religious belief, is insufficient to overcome the compelling state interest involved in this case.
Appellant's first assignment of error is therefore overruled.
Appellant's second assignment of error states:
 II. THE TRIAL COURT ABUSED ITS DISCRETION IN THAT IT FAILED TO EVEN CONSIDER IF RESPONDENT SHOWED GOOD CAUSE FOR FAILING TO SUBMIT TO GENETIC TESTING.
In his second assignment of error, appellant contends that the trial court abused its discretion by failing to consider pursuant to R.C.3111.09(A)(2) whether appellant had shown good cause for his refusal to submit to genetic testing. Appellant contends that because the trial court found that appellant's failure to submit to genetic testing was "willful," but did not specifically find that appellant had failed to demonstrate good cause for his failure to submit to testing, the trial court abused its discretion in adjudicating appellant to be the natural father of Kamau Suttles. We disagree.
The trial court's determination that appellant's failure to submit to testing was willful necessarily means that his failure was without good cause. Appellant's second assignment of error is therefore overruled.
Appellant's third assignment of error states:
 III. RESPONDENT'S RIGHT TO PROCEDURAL DUE PROCESS HAS BEEN DENIED CONTRARY TO THE FOURTEENTH AMENDMENT OF THE UNITED STATES CONSTITUTION AND ARTICLE I SECTION 16 OF THE OHIO CONSTITUTION.
In his third assignment of error, appellant contends that the trial court decision adjudicating him to be the natural father of Kamau Suttles violates his rights to procedural due process because it was rendered without a hearing in which appellant had an opportunity to present evidence and cross-examine appellee on the merits of her claim.
The Fourteenth Amendment to the United States Constitution provides that no State shall "deprive any person of life, liberty, or property without due process of law." Section 16, Article I of the Ohio Constitution provides: "All courts shall be open, and every person for injury done him in his land, goods, person or reputation, shall have remedy by due court of law, and shall have justice administered without denial or delay."
The State of Ohio has the legislative authority to adopt substantive provisions which control the determination of parentage. See United States Constitution, Amendment X, reserving all nondelegated powers to the states. Pursuant to that authority, the legislature has determined in R.C. 3111.09(A) that a trial court may make a paternity determination as a sanction for a party's willful refusal to submit to genetic testing.Marsh v. Clay (1998), 125 Ohio App.3d 518, 520.
The record reflects that appellant was advised that his willful refusal to submit to genetic testing could result in a determination of paternity. Further, he was given notice and an opportunity to be heard at the hearing to determine whether his refusal to submit to genetic testing was willful. After the trial court conducted a hearing at which appellant testified and submitted other evidence regarding the reasons for his refusal to submit to testing, the trial court concluded that appellant willfully refused to submit to genetic testing. Pursuant to R.C. 311.09(A), as a sanction, the trial court adjudicated appellant to be the father of Kamau Suttles. We find no denial of procedural due process in the imposition of this sanction.
This case has been pending for nearly eight years and appellant has been represented throughout by counsel. The record reflects that upon receipt by the trial court of appellee's papers initiating this action, appellant was given notice and an opportunity to be heard, to examine and cross-examine by deposition appellee and any other witnesses, and to oppose appellee's claims with evidence. Appellant has had pretrials, court hearings and adjudications on the record at every juncture of the case, including two appeals to this court. The requirements of procedural due process have clearly been met in this case. See Goldberg v. Kelly (1970),397 U.S. 254.
Appellant's third assignment of error is therefore overruled.
Appellant's fourth assignment of error states:
 IV. RESPONDENT HAS BEEN DENIED EQUAL PROTECTION OF THE LAW IN VIOLATION OF THE FOURTEENTH AMENDMENT OF THE UNITED STATES CONSTITUTION AND ARTICLE I
SECTION 1 OF THE OHIO CONSTITUTION.
In his fourth assignment of error, appellant contends that he has been denied his right to equal protection of the law, as guaranteed by the United States and Ohio Constitutions.
R.C. 3111.37(B) provides:
 If a woman is the subject of a non-spousal artificial insemination, the donor shall not be treated in law or regarded as the natural father of a child conceived as a result of the artificial insemination, and a child so conceived shall not be treated in law or regarded as the natural child of the donor. * * *
Appellant contends that because appellee purposely decided to become pregnant by him without informing him that she intended to do so, he is, in effect, merely a sperm donor. Accordingly, appellee argues, pursuant to R.C. 3111.37(B), Kamau Suttles should not be regarded or treated by law as his natural child. To hold otherwise, appellant contends, denies him equal protection of the law.
As counsel for appellant conceded at oral argument, however, there is nothing in the record to support appellant's contention that appellee purposely decided to become pregnant by appellant. Moreover, R.C. 3111.37
is not applicable to situations such as the one at hand, i.e., where both parties acknowledge they had an ongoing intimate relationship for a period of time.
Appellant's fourth assignment of error is therefore overruled.
Appellant's fifth assignment of error states:
 V. THE TRIAL COURT ABUSED ITS DISCRETION IN ESTABLISHING THE AMOUNT OF CHILD SUPPORT BEYOND THE AMOUNT WARRANTED BY RESPONDENT'S INCOME.
In his fifth assignment of error, appellant contends that the trial court erred in ordering him to pay $50 per month in child support. Appellant contends that pursuant to R.C. 3113.215, the trial court calculated that appellant should pay $20 per month, but then abused its discretion in ordering appellant to pay $50 per month in child support. Appellant asserts that because appellee makes more money than he does, has no other children and has not relied upon him for child support since the birth of the child, the trial court should have ordered that he not be required to pay any support. We disagree.
R.C. 3113.215 (B)(7)(a) provides, in pertinent part:
 In any action in which a child support order is issued or modified under Chapter 3113, * * * the court shall issue a minimum support order requiring the obligor to pay a minimum amount of fifty dollars a month for child support under the child support order. The court, in its discretion and in appropriate circumstances, may issue a minimum support order requiring the obligor to pay an amount of child support that is less than fifty dollars a month or not requiring the obligor to pay an amount for support. The appropriate circumstances for which a court may issue a minimum support order requiring an obligor to pay an amount of child support that is less than fifty dollars a month or not requiring the obligor to pay an amount for support include, but are not limited to, the nonresidential parent's medically verified or documented physical or mental disability or institutionalization in a facility of persons with a mental illness. * * * (Emphasis added.)
There is no evidence in the record that appellant suffers from any physical or mental disability that would make it appropriate for the court to order that appellant pay less than $50 per month in child support.
R.C. 3111.215(B)(2)(c) provides that the court shall not order an amount of child support that deviates from the amount of child support calculated on the Child Support Computation Worksheet unless the court determines that the amount calculated pursuant to the applicable worksheet would be unjust or inappropriate and would not be in the best interest of the child and enters such determination in its order. Here, as required by statute, the trial court found that for appellant to pay only $20 per month in child support would be unjust or inappropriate and not in the best interest of the child. The trial court stated:
 * * * [T]he Ohio Legislature has determined that the minimum child support order is $50.00 per month. Respondent has a legal duty to support his minor child. The Magistrate recognizes that to require the Respondent to assume the responsibilities of full-time employment at age 63, and further recognizing that Respondent has never held a full-time position in his life, would be setting up the Respondent for failure, as well as the Petitioner and minor child for disappointment. However, Respondent's duty should not fall below the minimum that is required by law.
It is undisputed that appellant has never made a lot of money. Appellant, however, is an artist of some repute in the Cleveland area and has been able to support himself from the sale of his art work and his work as a lecturer/counselor. Indeed, appellant has been able to retain counsel for the nearly eight years this litigation has been pending. We find no abuse of discretion, therefore, in ordering him to pay the minimum required by law to support his child.
Appellant's fifth assignment of error is therefore overruled.
It is ordered that appellee recover of appellant her costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court, Domestic Relations Division, to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
DIANE KARPINSKI, P.J. and ANNE L. KILBANE, J., CONCUR.
[1] R.C. 3111.09(A)(2) provides, in pertinent part:
 * * * If the mother or other guardian or custodian of the child brings an action under sections 3111.01
to 3111.19 of the Revised Code and if the alleged father of the child willfully fails to submit himself to genetic testing * * *, the court shall issue an order determining the existence of a parent and child relationship between the father and the child without testing. If a party shows good cause for failing to submit to genetic testing * * * the court shall not consider the failure to be willful.